**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **MICHAEL HATHAWAY**, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>**v.**<br><br>**VALLEY PIZZA, INC.,** and **CHARLES ANTHONY OSANI**,<br><br>Defendants. | **Case No. 1:20-CV-00089-DCLC-HBG** |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

Plaintiff, Michael Hathaway, individually and on behalf of similarly situated persons ("Plaintiff"), by and through his undersigned counsel, respectfully requests that this Court grant final approval of the Settlement and Release Agreement ("Agreement") [previously filed as Dkt. #25-2][1] reached by the Parties to this action. The Parties additionally filed Addendums to the Settlement Agreement as Exhibits to the Parties' Amended Joint Motion for Preliminary Approval of Collective Action Settlement Agreement [Dkt. #31-2, 31-3]. Defendants Valley Pizza, Inc. and Charles Anthony Osani (collectively "Defendants") do not oppose Plaintiff's Motion or the relief requested herein for settlement purposes only. As set forth below, the Agreement satisfies all of the applicable standards to warrant final approval and dismissal of this matter and is modeled after the agreement in *Doyle v. Be Hurd, Inc. et al*, Case 3:20-cv-138 (E.D. TN.) that was previously and just recently approved by this Court.

Accordingly, Plaintiff respectfully requests the Court issue an Order in the attached

---

[1] The Agreement was filed with the monetary terms redacted and the Court was provided with an unredacted copy for *in camera* inspection.

FP 40623470.1

proposed form:

(1) finally certifying the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only;

(2) granting final approval of the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(3) approving distribution of the Net Settlement Fund, as defined in the Agreement, to the Participating Class Members;

(4) approving a participation award payment in the amount specified in the Agreement to Plaintiff Michael Hathaway;

(5) approving payment of the actual costs of the Settlement Claims Administrator and Plaintiff's Counsel in the amount specified in the Agreement;

(6) approving attorneys' fees and costs to Class Counsel[2] in the amount not to exceed 33% of the Total Settlement Amount;

(7) permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against Defendants and the Released Parties any and all of the Settlement Class Members' Released Claims;

(8) permanently enjoining the Class Representative from prosecuting against Defendants and the Released Parties any and all of the Class Representative's Released Claims; and

(9) entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

---

[2] The term "Class Counsel" refers to the attorneys who represent Plaintiff and the Participating Class Members.

# I.    INTRODUCTION

This class and collective action lawsuit for unpaid minimum wages against Defendants was settled following a full-day mediation between the Parties, subject to the Court's approval. On February 25, 2021, the Court granted the Parties' Amended Joint Motion For Preliminary Approval of Class and Collective Action Settlement Agreement. (Dkt. #31). Pursuant to that Order (Dkt. #32), the Parties, through the third-party administrator, sent the approved Notice of Class Action Settlement and Claim Form to all Settlement Class Members, thereby notifying all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice, there were no objections to the Agreement. Similarly, no Settlement Class Member has requested to participate in the Fairness Hearing. *See generally*, Exhibit 1, Declaration of Nancy Johnson, President of CAC Services Group, LLC ("Johnson Decl."); *see also* Exhibit 2, Status Report from Third-Party Administrator. As this Motion and the relief requested is unopposed by Class Members and Defendants, the Court should grant Plaintiff's Motion.

# II.    BACKGROUND

Plaintiff filed this lawsuit ("the Litigation") on behalf of himself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and related state common law by failing to pay him and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were alleged to be insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and related state laws. The Parties participated in an alternative

dispute resolution ("ADR") process that included a full-day in-person mediation before an experienced wage and hour class and collective action mediator and Tennessee employment lawyer, Allen Blair, Esquire, that took place on November 12, 2020. Prior to the mediation, the Parties engaged in limited pre-mediation discovery that included the production of mileage and mileage reimbursement data for each store where Settlement Class Members were employed by Defendants. In preparation for the mediation, the Parties drafted detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and applicable state laws. Utilizing these calculations, Plaintiff concluded he had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair and arms-length settlement of this matter. The terms of the Parties' settlement are set forth in the Parties' Agreement.

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants further contend that even if liability were established by Plaintiffs, which they deny, they acted in good faith and that a two-year, as opposed to an extended statute of limitations, should apply to Plaintiff's claims. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes. If the Court were to accept these arguments, it would negate a substantial percentage, or all of the alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendants outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendants in Tennessee and Alabama during the maximum potentially applicable statutory periods. Plaintiff respectfully submits that this

Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

## III.    THE TERMS OF THE AGREEMENT

The Parties negotiated the Agreement on behalf of various Settlement Classes of Delivery Drivers defined as follows:

- Delivery drivers who worked for Defendants in Tennessee from August 27, 2017 through February 25, 2021; and

- Delivery drivers who worked for Defendants in Alabama from October 23, 2017 through August 30, 2020.[3]

The Agreement allowed Delivery Drivers to participate in the Settlement by filing a Claim Form during the notice period. The Agreement provides that even those Delivery Drivers who elected not to file a claim would still receive a minimum payment amount, as specified in the Agreement. Following the class action settlement notice, no objections to the settlement were filed and just two (2) drivers opted-out of the settlement. *See* Johnson Decl.

Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement (the Maximum Settlement Amount) are as follows:

1. The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed that specified in the Agreement and as further supported by the attached Declaration of Nancy Johnson, President of CAC Services Group, LLC;

2. As further detailed in ¶ D below, Plaintiff Hathaway will receive the amount specified in the Agreement as a service award in recognition of the work involved and the benefits achieved by the Plaintiffs;

---

[3] Defendants sold the Alabama stores on August 31, 2020, and, therefore, the Release Period for Alabama drivers is through the last date drivers were employed by Defendants in Alabama.

3. As further detailed in ¶ C below, Class Counsel will receive the amount specified in the Agreement for attorneys' fees and advanced litigation costs, which collectively equate to 33% of the Total Settlement Amount;

4. All Authorized Claimants or approximately 23%[4] of the Settlement Class Members that chose to affirmatively opt-in to the settlement will receive their full share of the applicable FLSA Claim Fund;

5. Two (2) Settlement Class Members have elected to opt-out of the Settlement and retain all rights against Defendants, subject to applicable statutes of limitation and other defenses. All remaining Settlement Class Members will receive a minimum payment,[5] as set forth in the Agreement, from the Minimum Payment Funds. Individuals that did not affirmatively opt-in to the settlement will retain all rights under federal law and pursuant to the FLSA's opt-in provisions, subject to applicable statutes of limitation and other defenses;

6. All Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will remain eligible to submit a claim for up to the full amount of their Potential Settlement Payment (as defined in the Agreement), less any minimum payment already received, from the Reserve Fund, which will initially be funded by the amount specified in the Agreement and will be supplemented by unclaimed funds from the aforementioned settlement funds throughout the extended three-year Reserve Fund Period and until 2024.

---

[4] This level of participation is in line with Counsel's prior estimation and class actions handled for delivery drivers by Class Counsel. *See e.g.*, *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D.N.C.) (20% opt-in rate); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. Ind.) (21%); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. Va.) (16%).

[5] Expected to be within the range of those previously approved by this Court. *See Doyle v. Be Hurd, Inc. et al*, Case 3:20-cv-138 (E.D. Tenn.) (proposed minimum payment recently approved in separate delivery driver mater handled by Class Counsel).

## IV.     THE COURT SHOULD APPROVE THE AGREEMENT

Federal Rule of Civil Procedure 23(e) provides a class action can be settled only with court approval. In the Sixth Circuit, there is a three-step process for approving class action settlements: (1) the court preliminarily approves the proposed settlement; (2) the class members receive notice of the proposed settlement; and (3) after a hearing, the court finally approves the settlement. *Tenn. Assoc. of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-566 (6th Cir. 2001). This Court has already preliminarily approved the proposed settlement and Class Members have received notice of the proposed settlement. No Class Members have objected to the settlement and the Court should finally approve the settlement for the additional reasons that follow.

### A.     Standard for Final Approval of Class Settlements

Public policy strongly favors the settlement of disputes without litigation. *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010). Accordingly, settlement agreements should be upheld whenever equitable and policy considerations so permit. *Robinson*, 566 F.3d at 648. This is especially true in class action litigation, in which there is a "particularly muscular" presumption in favor of class action settlements. *Whitlock v. FSL Mgmt., LLC*, 842 F.3d 1084, 1094 (6th Cir. 2016) (quoting *Ehrhart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)); *see also Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *Lonardo*, 706 F. Supp. 2d at 778 (same).

Parties settling a class action must seek approval of the settlement from the Court. FED. R. CIV. P. 23(e). Under Rule 23(e)(2), at the final approval stage, the Court ultimately must determine that the settlement is "fair, reasonable, and adequate." *UAW*, 497 F.3d at 625. The Court has broad discretion in evaluating a class action settlement and its decision to approve a settlement will be

reversed only for an abuse of discretion. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013). Notwithstanding its discretion, the Court's evaluation of the Settlement is guided by the following "presumptions and rules": "that settlement is favored; that a settlement reached at arms-length is presumed to be fair; [and] that a court must accept or reject the settlement but cannot rewrite it." *In re Amazon.com, Inc. Fulfillment Center FLSA and Wage and Hour Litig.*, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016) (quoting Newberg on Class Actions § 13:43 (5th ed. 2016)). For the reasons that follow, approval of the Settlement Agreement is warranted.

### 1.    The Settlement Was Honestly and Fairly Negotiated

The fairness of the settlement negotiation should be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have marred the negotiations themselves. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983). The primary concern is the protection of class members whose rights may not have been given adequate consideration during settlement negotiations. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. *See generally*, Declaration of J. Forester attached at Exhibit 3. The Parties investigated the merits of the claims and Defendants' defenses and engaged in mediation with an experienced wage and hour class and collective action mediator. *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06-299-JBC, 2008 WL 2885230, at *6 (E.D. Ky. Oct. 23, 2008) (finding no risk of fraud or collusion relative to final approval, where settlement was "the product of arm's length, good-faith settlement negotiations" reached after mediation through "an experienced, third-party neutral mediator"); *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement

negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

Through formal and informal discovery, the Parties possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion.

2. <u>**Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**</u>

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (*quoting In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). As the Sixth Circuit has explained, "the likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *Id*. Accordingly, a plaintiff's likelihood of success on the merits must be "weigh[ed] . . . against the amount and form of relief offered in the settlement." *UAW*, 497 F.3d at 631. In weighing the likelihood of success, the Court should not "decide the merits of the case or resolve unsettled legal questions." *Id*. at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). The court's "task is not to not to decide whether one side is right or even whether one side has the better of these arguments." *Id*. at 632. Rather, the critical question is "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id*.

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See Brent v. Midland Funding, LLC*, No. 3:11-cv-

1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (citing to <u>4 Alba Conte & Herbert B.</u> <u>Newberg, Newberg on Class Actions § 11.50 (4th ed.2002)</u> that "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Plaintiff believes that his claims are strong, but recognizes that success is not guaranteed. Plaintiff believes Defendants violated the FLSA and state law by failing to pay him and other similarly situated Delivery Drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants, however, contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants are also confident that Plaintiff would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the two-year period for non-willful violations would be applicable in this matter or whether a longer period could apply. Second, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Third, Defendants dispute that class or collective action treatment is appropriate in this case. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

In deciding whether a settlement is fair, reasonable, and adequate, a factor courts consider is whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1080 (6th Cir. 1984). A finding that the value of an immediate recovery outweighs the possibility of future relief can be made after a competent evaluation of the case by counsel. *Granada Investments, Inc. v. DWG Corp.*, 1:89CV0641, 1991 WL 338233, at *8 (N.D. Ohio Feb. 12, 1991), aff'd, 962 F.2d 1203 (6th Cir. 1992). The benefit of a proposed settlement framework "outweighs the value of any remedy that litigation might produce." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007). The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties will engage in additional discovery, including depositions of the individual Defendants, Plaintiff, and, if the case were certified as a class action, a representative sample of class members. The Parties also would have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendants' Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment as to various issues in the case. The trial would include testimony by representatives of the Defendants, Class Members (if certified), and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for the Settlement Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Settlement Class Members to recover. Based on these circumstances, it is prudent

for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D. Mich. 2003) ("Certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal.").

### 4. Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and in deciding whether a proposed settlement warrants approval "the informed and reasoned judgement of counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-MD-01998, 2010 WL 3341200, at *7 (W.D. Ky. Aug. 23, 2010); *see also Thacker v. Chesapeake Appalachia, L.L.C., 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010),* aff'd sub nom. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). When evaluated in light of the four factors identified by this Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. Standard for Approval of FLSA Settlements

As stated above, the settlement provides relief for individuals who have filed Claim Forms and for those who have chosen not to opt-out of the settlement, and even for those who may choose to file a Claim Form at a later time through the negotiated Reserve Fund. For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under Section 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Rampersad v. Certified Installation*, LLC, No. 1:12-CV-00032, 2012 U.S. Dist LEXIS 167156, *2 (E.D. Tenn. Nov. 26, 2012). The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *2 (E.D. Ky. Oct. 23, 2008) (same).

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations. In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories in support of their positions. This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate for the Delivery Drivers' vehicle expenses and the propriety of Defendants' use and application of a tip credit. The Settlement occurred only after informal discovery, including production of payroll and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with a mediator experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed

issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different Opt-Ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each Opt-In. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, Plaintiff requests that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

### C. Attorneys' Fees and Costs Provided in the Settlement are Appropriate

Class Counsel is entitled to recover attorney's fees and costs under the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., (the "FLSA"). Moreover, even in the absence of a statutory entitlement to attorney's fees and costs, Class Counsel is entitled to a fee/cost award under the equitable common fund doctrine, which entitles a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client to reasonable attorney's fees from the fund as a whole. *Boeing Co. v. Gemert*, 444 U.S. 472, 478 (1980).

Courts in the Sixth Circuit have discretion to calculate awards of attorney's fees by using either a lodestar/multiplier approach or a percentage of the fund calculation like in the present case. *Rollins v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-517 (6th Cir. 1993). When reviewing awards of attorney's fees it is only necessary that the award "be reasonable under the circumstances." *Id.* at 516.

Courts in the Sixth Circuit evaluate the reasonableness of an award that is a percentage of the common fund using six factors: (1) the value of the benefit rendered to the plaintiff class; (2)

the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.3d 627, 634 (W.D. Ky., 2006); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

1. **The Requested Attorneys' Fees Should Be Approved as Reasonable When Viewed as A Percentage of The Total Settlement Fund.**

"In class action cases, counsel who recover a common fund settlement . . . are entitled to reasonable attorney's fees paid from the fund." *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 (E.D.Pa. 2008). Judge Posner, in a case addressing class counsel's entitlement to fees from a common settlement fund, has cogently summarized the equitable and economic principles underlying class counsel's entitlement to a fair fee:

> The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible. It is infeasible in a class action because no member of the class has a sufficient stake to drive a hard – or any – bargain with the lawyer. So the judge has to step in and play surrogate client.
>
> ***
>
> The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $ 45 million. What would its lawyers have gotten pursuant to their contingent fee contract? We know that in personal-injury suits the usual range for contingent fees is between 33 and 50 percent but we also know that in large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered – it might be 33 percent of the first million, 25 percent of the next million, and so

on down. The class counsel did not present and the judge did not ask for testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit. Yet it might be quicker and easier to generate such evidence than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth.

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992).

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc*., 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted).

Here, application of the percentage of recovery method supports Class Counsel's request. After deducting $4,100.46 in Plaintiff's counsel's costs, the Settlement allocates fees of less than 33% of the Total Settlement Amount. This percentage recovery falls well within the range that is regularly approved by courts within the Sixth Circuit. *See, e.g., Mitcham v. Intrepid U.S.A., Inc.*, 2019 U.S. Dist. LEXIS 88864, *11 (W.D. Ky., May 28, 2019) (approving attorney fee award of 40 percent); *Otis v. TAH Pizza, Inc. et al.,* Case 2: 18-cv-00111 (E.D. Tenn.) (same); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509 *21 (S.D. Ohio September 20, 2019) (holding that an attorney fee award of 33% is customary in similar cases.); *Barnes v. Winking Lizard Inc.*, 2019 WL 1614822 *19 (N.D. Ohio March 26, 2019) (approving attorney fee award of 40 percent). Application of the "percentage of recovery" method supports the requested fee recovery.

2. **The Requested Fee Should Be Approved as Reasonable Under the Sixth Circuit's factors.**

   a. **The Value of the Benefit Rendered to the Plaintiff Class**

The settlement represents a significant recovery on behalf of the class. Had Defendants defeated Plaintiff's motion for Rule 23 class certification and as is common in both Tennessee and Alabama, this case would only have proceeded on behalf of significantly fewer individuals.[6] If the settlement is approved by the Court, all settlement class members will receive compensation. Moreover, individuals will still be able to affirmatively opt-in or claim funds for an additional three years. Thus, the "value of the benefit rendered to the plaintiff class" factor supports the proposed fee award.

   b. **The Value of the Services on an Hourly Basis**

Collective and class action litigation is time consuming and requires a substantial commitment of time and resources, including advancing all litigation costs. Class Counsel also accepted this case on a contingency basis with no guarantee of payment. Despite receiving no payment for their work to date in this case and even when no accounting is done for time to be incurred throughout the extended and multi-year Reserve Fund Period, Class Counsel's lodestar crosscheck is already well within the range of reasonableness.[7] *Mishkin v. Zynex, Inc.,* 2012 WL 4069295 at *2 (D. Colo. Sep. 14, 2012) (collecting cases approving multipliers ranging from 2.5 to 4.6); *see also, Fangman v. Genuine Title, LLC,* CV RDB-14-0081, 2017 WL 2591525, at *6 (D. Md. June 15, 2017) (lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee).

   c. **Whether the Services Were Undertaken on a Contingent Fee Basis**

---

[6] The 23% or less of the Class Members who affirmatively chose to opt-in.
[7] $276,399.54 fees reduced by costs/$550 per hour/120 hours = 4.18.

Class Counsel represented Plaintiff on a contingency fee basis. If Plaintiff did not ultimately prevail, Class Counsel would have not recovered any of the incurred fees and out-of-pocket costs. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Many lower wage workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Also, "[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (D. Colo., November 13, 2013). In sum, the risk associated with the contingency fee arrangement here augurs for Court approval of the fee award sought. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.")

### d. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

Courts in the Sixth Circuit have held that "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, *14 (S.D. Ohio, June 24, 2011). Additionally, the remedial nature of the FLSA relies on attorney representation for low wage workers like the pizza delivery drivers involved here. Without enforcement of the FLSA's attorneys' fees provision through cases – and motions – like this one, many workers would be left without recourse. Thus,

the "society's take in rewarding attorneys" factor is supports the fee award.

### e. The Complexity of the Litigation

Two of the fundamental questions in this case were: (i) whether Plaintiffs were entitled to and did in fact receive reimbursement compensation at or reasonably approximating IRS proscribed rates; and (ii) whether these questions could be resolved on a class or collective action basis. Analysis of these questions and effective prosecution of the class claim required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA and FED. R. CIV. PROC. 23, which is uniquely possessed by the collective backgrounds of Plaintiff's counsel. *See* Plaintiff's Counsel's Declaration. In sum, the "complexity of the litigation" factor supports the proposed fee award.

### f. The Professional Skill and Standing of Counsel

Employee minimum wage rights cases are governed by a highly technical and specialized set of state and federal wage statutes and regulations. Class Counsel's practice is focused in this highly technical area and Counsel has litigated numerous class cases, including those brought on behalf of other Domino's delivery drivers advanced under related state laws and the FLSA. *See* Plaintiff's Counsel's Declaration. Class Counsel had the requisite skill to perform the legal service required in this complex litigation. Class Counsel's experience is demonstrated by the excellent and highly efficient result obtained for the Class in this case. Thus, the "professional skill and standing" factor supports the requested fee award.

### D. Named Plaintiff Deserves a Service Payment

Services payments "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001); *Otis v. TAH Pizza, Inc. et al.,* Case 2:18-cv-00111 (E.D. Tenn.) ($5,000.00). The modest service payment

sought for Mr. Hathaway should not only be approved because it is within the limits of awards approved in various districts and related cases, but also because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. *See* Plaintiff's Counsel's Declaration. He was responsible for providing guidance and assistance on numerous occasions to Plaintiffs' Counsel. Mr. Hathaway also participated in the settlement process. Therein, Mr. Hathaway advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been achieved. *See*, Plaintiff's Counsel's Declaration. Therefore, payment of a service award, as agreed by the Parties, is justified.

## V.     <u>CONCLUSION</u>

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator. For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement.

RESPECTFULLY SUBMITTED,

*/s/ J. Forester*

**J. Forester**
Texas Bar No. 24087532
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75020
Phone: 214-210-2100
jay@foresterhaynie.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with defense counsel and pursuant to this conference and in accordance with the terms of the Settlement Agreement was advised that Defendants do not oppose the relief sought.

*/s/ J. Forester*
**J. Forester**


## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

*/s/ J. Forester*
**J. Forester**